**GENERAL MOTORS CORPORATION,**
Appellant–Defendant,

v.

**Dorothy W. ZIRKEL and Jack R.**
**Zirkel, Appellees–Plaintiffs.**

No. 48A05–9108–CV–273.

Court of Appeals of Indiana,
Fifth District.

Nov. 19, 1992.

Ralph E. Sipes, Busby, Austin, Cooper & Farr, Anderson, for appellant-defendant.

Richard F. Davisson, Davisson & Davisson, P.C., Anderson, for appellees-plaintiffs.

BARTEAU, Judge.

General Motors Corporation ("GM") appeals the trial court's judgment in favor of Dorothy and Jack Zirkel (the "Zirkels") on their complaint for damages under Ind. Code 24-5-13-1 et seq., commonly known as the Indiana Lemon Law. We restate the issues on appeal as:

1. Whether the evidence supports the trial court's conclusion that the Zirkels's car has a nonconformity which was subjected to repair at least four times and which continues to exist;

2. Whether the trial court erred in calculating the amount of the refund; and

3. Whether the evidence supports the amount awarded as attorney fees.

We reverse.

## FACTS

Dorothy and Jack Zirkel purchased a new 1988 Cadillac Seville from Ed Martin Cadillac–Oldsmobile, Inc. ("Ed Martin"), an authorized General Motors dealer, on August 22, 1988. From the date of purchase through February, 1989, the Zirkels brought the car back to Ed Martin at least twenty times because of dissatisfaction with the brakes. Invoices show that the brakes were repaired on September 23, 1988 and October 12, 1988. On those two occasions, the Zirkels's complained that the brakes were "pulsating" to a stop. The problem was diagnosed as excessive wear on the brakes, perhaps from the driver "riding" the brakes. The brake rotors were refaced and the brake pads were scuffed. These were the only two repairs involving the brakes until February, 1989 when the car was involved in an accident.

The accident occurred when Dorothy Zirkel attempted to stop the car at a light and rear-ended the car in front of hers. At the time of the accident Dorothy did not mention to anyone, including the police officer who took the accident report, that she failed to stop because the brakes did not work. Sometime after the accident and while the car was in the body shop Dorothy did report to Ed Martin and to GM that she believed she had the accident because the brakes did not work. Consequently, when the car was sent to the service department after having the body work done, Ron Hinton, Ed Martin's service manager, had the brakes checked. Based on his conversation with Dorothy and prior to checking the car he made a notation on the invoice sheet that the brakes would not stop the car.

Upon inspecting the brakes, the service technician found them to be in good working condition and not in need of repair. However, Hinton instructed the technician to replace the rotors, the pads, and the brake booster assembly in an attempt to make the Zirkels happy with the car. Hinton explained that he had the rotors and pads replaced because rust had built up while the car was in the shop for the body work. Because the rotors and pads had been refaced and scuffed twice before, Hinton believed it would be safer to replace them rather than to reface and scuff them again. The booster assembly was replaced with a 1989 booster assembly as a measure to make the pedal have a "harder" feel because Dorothy Zirkel had made complaints that the brakes sometimes felt "soft."

While the car was in the shop, Ed Martin gave the Zirkels a 1989 Cadillac to drive which the Zirkels took to Florida for vacation. The Zirkels had no complaint with the brakes on the loaner car. The brake replacement was made on their car on March 31, 1989 and the car was then re-

turned to the Zirkels when they returned from Florida in May. Mrs. Zirkel said the car was returned to Ed Martin about six times after the February accident. On June 5, 1989 the car was taken to Ed Martin with the complaint that the brakes were "hard, sometimes spongy." The invoice notes that the service technician was not able to duplicate the complaint and no repairs were made to the brakes. The Zirkels brought the car in again on July 11, 1989 with the complaint "brake pedal sometimes soft." Again, the complaint could not be duplicated when the car was taken for a test drive and no problems with the brakes were found. No other invoices evidence that the car was brought in for repair work. Ed Martin prepares invoices only when repair work is performed. Invoices for June 5 and July 11 were prepared even though no repairs were made to the brakes because repairs unrelated to the brakes were performed. After returning the car on July 11 the Zirkels were tired of dealing with the car and left it at Ed Martin. It was still at the dealer's at the time of trial.

The only evidence that the brakes were defective came from the Zirkels. Each of the experts that testified said that the excessive wear of the rotors and pads within the first two months was typical of a driver adjusting to the feel of the four wheel disc braking system of the Cadillac and that while the brakes may feel different or "funny" to the driver, the condition did not affect the braking ability of the car.

## STANDARD OF REVIEW

When a party has requested specific findings of fact and conclusions of law under Ind. Trial Rule 52(A), as GM has here, the reviewing court cannot affirm the judgment on any legal basis; rather, the court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Bd. of Comm'r v. Rittenhouse* (1991), Ind. App., 575 N.E.2d 663, 665. In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions of law entered on the findings. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *reh'g denied.* Too, findings of fact may be assailed as clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

## LEMON LAW

The Indiana Motor Vehicle Act, commonly known as the Lemon Law, is found at I.C. 24–5–13–1 et seq. Lemon Laws have been enacted across the country in response to the problem "that once the buyer has bought a lemon, the dealer or manufacturer, for any number of reasons, is either unwilling or unable to take all steps necessary toward giving the buyer what the dealer and the manufacturer promised: a defect free, safe and reliable automobile reasonably worth its purchase price." Harold Greenberg, *The Indiana Motor Vehicle Protection Act of 1988: The Real Thing for Sweetening the Lemon or Merely a Weak Artificial Sweetener?*, 22 Ind.L.Rev. 57, 58 (1989). Generally, the Indiana Lemon Law provides that if a motor vehicle suffers from a "nonconformity" within the first eighteen months or 18,000 miles the manufacturer must correct the "nonconformity." If the "nonconformity" cannot be corrected, the buyer is entitled to a replacement vehicle or a refund.

Relevant to the precise issues raised in this case, the Indiana Lemon Law provides that:

> "[N]onconformity" means any specific or generic defect or condition or any concurrent combination of defects or conditions that: (1) substantially impairs the use, market value, or safety of a motor vehicle; or (2) renders the motor vehicle nonconforming to the terms of an appli-

cable manufacturer's warranty. [I.C. 24–5–13–6.]

\* \* \* \* \* \*

If, after a reasonable number of attempts, the manufacturer, its agent, or authorized dealer is unable to correct the nonconformity, the manufacturer shall accept return of the vehicle from the buyer and, at the buyer's option, either, within thirty (30) days, refund the amount paid by the buyer or provide a replacement vehicle of comparable value. [I.C. 24–5–13–10.]

\* \* \* \* \* \*

A reasonable number of attempts is considered to have been undertaken to correct a nonconformity if: (1) the nonconformity has been subject to repair at least four (4) times by the manufacturer or its agents or authorized dealers, but the nonconformity continues to exist.... [I.C. 24–5–13–15(a)(1).]

The statute is premised on the fact that a "nonconformity" exists. Without a "nonconformity," the statute provides no relief. The nonconformity can be a defect or a condition that substantially impairs the use, market value or safety of the car.

■ Here, the trial court found that "the defect or condition of which the Plaintiffs complain substantially impaired the use, the market value or the safety of the motor vehicle" and that the "defect was a 'nonconformity' as defined by I.C. 24–5–13–6." (R.200). The trial court further found that the "vehicle nonconformity involved failure of the braking system," and that Ed Martin found the brakes to be defective on two occasions in the two months following purchase of the car. (R.201).

The evidence does not support these findings. The Zirkels have clearly shown that they were dissatisfied with the brakes and believed the brakes were defective in their new Cadillac. However, there is no evidence in the record to support their claim.

To the contrary, the evidence shows that the brakes were working at all times. Although at some time after the February accident Dorothy claimed the brakes *might* not have worked, she did not seem to have that belief at the time of the accident. The accident report listed the cause as driver inattention. When the brakes were inspected after the accident, they were in working condition.

At best, the Zirkels showed only that the brakes were wearing excessively in the first two months after the car was purchased. This was explained to be the result of the driver adjusting to the feel of the new brake system and perhaps "riding" the brakes to compensate for the "softer" feel of the brakes. As a result of this excessive wear, the pads were scuffed and the rotors turned on two occasions. There is absolutely no evidence that could be interpreted to mean that Ed Martin found the brakes to be defective or that the brakes were in fact defective.

■ We emphasize that the Zirkels did not present *any* expert evidence from a mechanic or anyone else knowledgeable about brakes to the effect that the brakes were defective or exhibited problems. Dorothy's own opinion that the brakes *felt* like they would not stop the car and were defective was the *only* evidence presented to show a nonconformity. However, even this evidence was erroneously admitted. *Humphries v. State* (1991), Ind.App., 568 N.E.2d 1033, 1036 (citing Robert L. Miller, Jr., *Indiana Evidence*, § 701.101) (nonexpert witness may testify only to facts known to witness; opinions or conclusions generally inadmissible). For appellate review purposes the erroneously admitted testimony is not substantial evidence having probative value. *Humphries*, 568 N.E.2d at 1036–37. The total lack of substantial evidence having probative value on the issue whether a nonconformity exists defeats the Zirkels's claim.[1]

---

1. The dissent argues that we are reweighing the evidence to reach this conclusion. However, we disagree with Judge Rucker's characterization of the evidence in the record. The only invoice in the record with a notation that the car would not stop is the invoice filled out by Hinton after the accident when Dorothy told him that the accident *might* have happened because the brakes would not stop the car. An inspection of the brakes revealed that the brakes worked.

The evidence in this case reveals the Zirkels's dissatisfaction with the car and their loss of confidence in the vehicle. However, absent proof of a nonconformity, we need not discuss whether they are entitled to relief under the Lemon Law on the basis that the car was subject to repair at least four times without correcting the problem. The Zirkels are unable to point to a "nonconformity," as that term is defined in the statute, as the cause of their dissatisfaction with the car. While we can certainly sympathize with the Zirkels's frustration if they did not feel comfortable with the brakes in their car, we cannot say that the evidence supports their belief that the brakes were defective or impaired the use, market value or safety of the car. Consequently, they have not brought themselves within the Lemon Law and are not entitled to relief.

The trial court's findings are clearly erroneous because the record lacks facts or reasonable inferences to support them. Because the Zirkels have not shown they are entitled to relief under the Lemon Law, we need not discuss Issues 2 and 3.

REVERSED.

CONOVER, J., concurs.

RUCKER, J., dissents with opinion.

RUCKER, Judge, dissenting.

I must respectfully dissent from the majority opinion. In light of our relevant standard of review in this case, I conclude that the decision of the trial court should not be disturbed.

The trial court specifically found the failure of the brake system of the Zirkels' Cadillac to be a "nonconformity," as defined by Ind.Code § 24–5–13–6. The majority rejects this finding as unsupported by substantial evidence. The testimony of Dorothy Zirkel, indicating periodic failures of the brake system, is dismissed as mere "opinion" or "belief" and thereby without probative value under the rule of *Humphries v. State* (1991), Ind.App., 568 N.E.2d 1033. Contrary to Zirkel's "opinion," the majority finds the record to only show that "the brakes were working at all times." *Op.* at 1072. The majority concludes that reversal is therefore mandated because the Zirkels presented no substantial evidence of a nonconformity pursuant to statute and the trial court's finding and judgment are thus clearly erroneous.

I disagree.

The record reveals service invoices and testimony indicating that: (1) the Zirkels repeatedly reported to Ed Martin that the brakes of the Cadillac would not stop the car, and (2) Ed Martin was unable to effect a permanent solution to their complaint with service on the brake system of the car. Dorothy Zirkel testified that on certain occasions the brakes would go to the floor without stopping the car. Her testimony describing the operation of the Cadillac's brake system constitutes a matter of evidentiary fact, not opinion, and the rule of *Humphries* is without application so as to render the testimony inadmissible.

Indiana Code § 24–5–13–6 provides that a "nonconformity" includes "any specific or generic defect or condition or any concurrent combination of defects or conditions that ... substantially impairs the use, market value, or safety of a motor vehicle." The majority does not dispute that the trial court was entitled to find a brake

---

Judge Rucker also points to testimony by Dorothy that he characterizes as indicating periodic failures of the brake system. When pressed on cross-examination for specifics as to why she believed the brakes were defective, Dorothy testified that "several" times she pressed the brake pedal all the way to the floor and the car would not stop. However, given the facts and circumstances of this case, we cannot say this is substantial and probative evidence. There is nothing in the record to indicate she ever had the car towed because the brakes failed and she did not feel it was safe to continue driving the car; there is no evidence that she ever took the car to Ed Martin, or any other mechanic, with the specific complaint that the brakes would not stop the car; and no mechanic was ever able to discover a problem with the brakes. This is a different situation than one in which a mechanic is aware there is a problem, but is just not able to correct it. Here, we have no probative evidence that a problem or defect existed in the first place. The record simply does not support the trial court's finding that Ed Martin found a defect and was unable to correct the problem.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆

system which occasionally fails is within the statutory definition of "nonconforming." Rather, the majority finds a sufficient basis for reversal in the testimony of Ed Martin employees who described the brake system of the Cadillac as without defect and who also opined that the Zirkels' problems were solely a function of their own inability to adjust to the "feel" of the brakes.

However, the credibility of witnesses and the weight to be given their testimony are matters entrusted solely to the trier of fact and are not within the permissible scope of our review as an appellate tribunal. The trier of fact in this case was not required to accept the foregoing testimony, and thereby discount Dorothy Zirkel's testimony that the brakes did not reliably stop the car. Neither was the trier of fact required to credit the self-serving explanations of the Ed Martin employees with regard to why the dealership undertook extensive rehabilitations of the Cadillac's brake system. There was substantial evidence to support the trial court's finding that the Cadillac's brake system was a nonconformity, pursuant to statutory definition.

When we review a case in which the trial court has rendered findings of fact and conclusions of law, our standard of review requires deference to the trial court's findings if there is evidence to support them, and in this determination we may consider only the evidence favorable to the judgment. *DeHaan v. DeHaan* (1991), Ind. App., 572 N.E.2d 1315, *trans. denied.* The majority correctly articulates this rule but fails to follow it, instead substituting its own view of the evidence for that of the trial judge. I would affirm the trial court's finding and judgment as supported by substantial evidence.